UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA           :            08 Cr. 1210 (SCR)
                                   :
            -against-              :
                                   :
ROBERT GROEZINGER,                 :
                                   :
                       Defendant.  :
--------------------------------------------------------x

### REPLY MEMORANDUM OF LAW

Defendant Robert Groezinger submits this Reply Memorandum of Law in support of his pretrial motions.

### POINT ONE

### THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE

The government contends that the search warrant affidavit established probable cause because certain internet chats were found on the computer of someone ("Perpetrator") who had previously been arrested for using an internet chatroom service (Google Hello) to send and receive child pornography images; those chats showed that Perpetrator had "exchanged" images on two occasions with an individual utilizing the username "picluverinusa"; "picluverinusa" initiated those chat sessions; some of the images sent by Perpetrator to "picluverinusa" contained child pornography; information obtained from Google, Yahoo, and Comcast linked "picluverinusa" to defendant's residence; and because "collectors" of child pornography rarely destroy such materials, there was a "fair probability" it would be found in defendant's home and/or computer.  (G. Br. 17).

The government is wrong, for the reasons set forth below.

1

First, this Court's decision in United States v. Genin, 594 F.Supp.2d 412 (S.D.N.Y. 2009), is controlling.  As in Genin, the warrant application here neither appends nor provides any description of the relevant images, and does not specify which of the five categories of "sexually explicit conduct," 18 U.S.C. § 2256(2)(A), the images fall into.  It just states that the images contain "child pornography."  This made it impossible for the magistrate judge who reviewed the warrant application to make an independent legal judgment that the images depicted the conduct described in any of the five categories of "sexually explicit conduct."  In short, the magistrate judge was being asked to rubber stamp the conclusions of the agent who submitted the application.

The government argues that Genin "should be read narrowly as a fact-specific decision." (G. Br. 18).[1]  However, it is clear that this Court did not intend its holding with respect to probable cause in Genin to be read narrowly or be limited to its facts.  What the government is really contending is that Genin was wrongly decided.  The government reasons that an agent's conclusion that certain images contain child pornography is but one factor for a magistrate judge to consider; that magistrate judges routinely rely on agents' statements that certain evidence is in fact contraband (e.g., guns, drugs, counterfeit currency); that the agent here had seen images that depicted conduct described in some of the other categories of sexually explicit conduct; and that since the affidavit here did not limit itself to images depicting the "lascivious exhibition of genitals or pubic area," an independent evaluation by the magistrate judge was not required.  (G. Br. 19-22).

---

[1] Ironically, elsewhere in its brief, the government contends that Genin is controlling authority for the proposition that the good faith exception applies in this case.  (G. Br. 30-31).

This argument misses Genin's point entirely.  Had the magistrate judge been told that the seized images included depictions of some of the other four "clearly defined and easily recognized" categories of "sexually explicit conduct" (e.g., sexual intercourse, masturbation), then perhaps the images themselves or a description of the images would not have been required. See United States v. Jasorka, 153 F.2d 58, 60 (2d Cir. 1998) (describing the district court's opinion).  But the magistrate judge was not told that fact.  Since the magistrate judge could not possibly have known that the images included depictions of other types of sexually explicit conduct, if indeed they did, the magistrate did not and could not make an independent legal judgment that such images contained child pornography based solely on the agent's conclusion.

The government also claims that the quote attributed to "picluverinusa" in the warrant affidavit – that he/she liked "anything young and cute no age prefs" – although obviously not an explicit reference to child pornography, could, "when taken in context," support a finding that it did indeed refer to child pornography.  (G. Br. 23-24).  The "context" to which the government refers is that this text was sent during a Google Hello chat in which images containing child pornography supposedly were "exchanged" with someone (Perpetrator) already charged with using Google Hello to distribute such images.  But "picluverinusa" did not "exchange" child pornography with Perpetrator.  As the government now (belatedly) concedes, the agent's statement under oath that "picluverinusa" sent child pornography images to Perpetrator is false. (G. Br. 33; Bogdanski aff., ¶ 5).

Likewise, using a "context" now known not to exist, the government claims that since "picluverinusa" "solicited and received" child pornography from Perpetrator, it was reasonable to infer that "picluverinusa" collected such images, and thus that such contraband would be

3

found at his residence. (G. Br. 24-25). But the only evidence of solicitation in the warrant affidavit is "picluverinusa's" statement that "he/she liked 'anything young and cute no age prefs.'" This statement can only be viewed as a solicitation of child pornography if it is true that "picluverinusa" sent child pornography to Perpetrator, which would suggest that he was a collector. Again, however, the latter premise is false – "picluverinusa" never sent any child pornography to Perpetrator. The importance of this false statement cannot be overstated.

Finally, the government's claim that the link between the images exchanged in the chats and the defendant's residence "was more than adequate" (G. Br. 26) is based on the fact that Google and Comcast records linked "picluverinusa" to an IP address assigned to defendant's residence. The problem for the government is that on the two key dates (December 21, 2007, and January 19, 2008) the relevant Google records do <u>not</u> show his Google Hello account being accessed from that IP address. This fact was <u>not</u> disclosed to the magistrate judge. Thus, the search warrant affidavit creates the misleading impression that the agent had documentary proof that defendant, from his residence, had communicated with Perpetrator via Google Hello on the two key dates.

The government says that defendant is "wrong" to make this claim – then immediately admits that defendant is right at least with respect to the first of the two dates (December 21, 2007). (G. Br. 27 & n.9). As to the second date (January 19, 2008), the government oddly claims that the since Google Hello is based in California, the log-in times were "captured and provided" in Pacific Standard Time, and thus when the times are converted to Eastern Standard Time, the Google records show "picluverinusa" accessing his account on "the date of the chat" with Perpetrator. (G. Br. 27).

First, the Google Hello chat (attached as Exhibit B to the government's brief) was found on the Perpetrator's computer – in California.  California, of course, is in the pacific time zone.  That chat took place on January 19, 2008, according to the chat itself, and according to the warrant affidavit.  Why then is the government converting the Google Hello log-in records to eastern time?[2]  There is every reason to believe that <u>both</u> the Google Hello log-in records <u>and</u> the chat session are time-stamped in pacific time.

The only question is whether the time-stamps match.  They don't – in date, time, or duration. The Google Hello records show the log-in and log-off times for "picluverinusa" as occurring on January 18 and then next on January 21; the records do not show any log-in on January 19.  By contrast, the chat session shows the log-in time as 06:24:58, and log-off at 6:39:45, on January 19.  In other words, the documents do not support the warrant affidavit's suggestion that the agent had documentary proof that defendant, from his residence, had communicated with Perpetrator via Google Hello on both of the two key dates.

Indeed, there is no evidence at all that "picluverinusa" logged into Google Hello on January 19 at or about the times reflected in the chat session on that date – even from a different computer.  That, of course, calls into question the authenticity of the chat sessions supposedly seized from Perpetrator's computer – another fact the government did not bother to share with the magistrate judge.

As a fall-back, the government argues that even if the affidavit did not include evidence showing that "picluverinusa" logged in during either of the chats <u>from</u> <u>home</u>, because he is a

---

[2]  Such a conversion would only be necessary if the chat session itself was time-stamped in eastern time.

collector of child pornography, there was a factual basis to conclude that child pornography would be found at defendant's residence since he accessed Hello Google from there at some point in time – just not on the two key dates alleged in the affidavit. (G. Br. 28). Again, there is no evidence that "picluverinusa" was a collector of child pornography, other than the statement the government now concedes was false (that he/she "sent" child pornography to Perpetrator). Moreover, it is a fact that the agent had less evidence of a nexus between the proscribed images and defendant's residence than he told the magistrate judge.

Under Genin and the facts of this case, there is no question the magistrate judge did not have a substantial basis for concluding that the search warrant application established sufficient probable cause. This Court should so find.

## POINT TWO

## THE GOOD FAITH EXCEPTION DOES NOT APPLY

The government has failed to sustain its burden to demonstrate the objective reasonableness of the agents' reliance on the warrant's issuance. United States v. George, 975 F.2d 72, 77 (2d Cir. 1992).[3] Therefore, the "good faith" exception to the exclusionary rule does not apply.

The government first argues that the search warrant affidavit was not so lacking in any indicia of probable cause that reliance on its issuance could not have been in good faith. (G. Br. 30). As set forth in our main brief and above, the affidavit was indeed sorely lacking in indicia of probable cause. Those arguments will not be repeated again here.

---

[3] Notably, the government's brief fails to acknowledge that it is the government's burden, not the defendant's, to establish objectively reasonable reliance.

Next, the government argues that the agent did not have notice of Genin because Genin was decided four months after the warrant was issued. (G. Br. 31). But the agent certainly did have notice of the decisions in United States v. Jasorka, 153 F.2d 58 (2d Cir. 1998), and United States v. Brunette, 256 F.3d 14 (1st Cir. 2001), both of which involved warrants submitted by Customs agents, like Agent Bogdanski. The essential principle of those cases – that in child pornography cases the agent needs to append the images or at least describe the images in detail because the court reviewing a warrant application is otherwise unable to perform the independent evaluation required by the Fourth Amendment, United States v. Brunette, 256 F.3d at 20 – could not have been missed by anyone experienced in the investigation of child pornography, like Agent Bogdanski. The agent did submit an affirmation in connection with the government's brief, but he fails to address this question – what was his knowledge and understanding of the import of these prior Customs cases, both of which were cited and discussed in defendant's main brief.

Moreover, the government claims – without any evidentiary support – that "[i]t had not been the practice or a requirement in this district that agents append images containing child pornography or describe it in detail." (G. Br. 32). This bald assertion is also not supported by anything in Agent Bogdanski's affirmation.

The failure of the government to support its assertions by affidavit or otherwise is significant because it is the government, not the defendant, that has the burden of proving good faith reliance. Broad and unsupported claims do not begin to meet that burden.

As to defendant's contention that the magistrate judge was knowingly or recklessly misled, the government first contends that the agent did not deliberately or recklessly mislead the

7

judge because he knew more about the images than he related in the warrant application and was available to answer the judge's questions; thus, he had "nothing to hide." (G. Br. 33). But "good faith reliance" does not mean reliance on what the agent already knew but did not disclose, but rather reliance on the fact that the warrant had been issued by a judge who had been given information sufficient to make an <u>independent</u> legal judgment that illegal contraband was located at particular premises. Since the magistrate judge here was not given sufficient information to make such a judgment, she was in effect being asked to rubber-stamp the agent's conclusion. It is not objectively reasonable for an agent to rely on a non-independent, rubber-stamped, conclusion, particularly when it is the agent himself who failed to provide sufficient information for any other conclusion.

Finally, the government <u>concedes</u> that the agent made several false statements in his affidavit – principally that (i) "picluverinusa" had received and distributed child pornography images when in fact he had received but not distributed such images, and (ii) that "picluverinusa" had sent child pornography images to Perpetrator, when in fact he had not.[4] The government calls these statements "inadvertent errors" and argues that they were immaterial. (G. Br. 33-34).

The government gives no explanation at all to support its conclusory statement (which it repeats several times) that the errors were "inadvertent." Indeed, in his affirmation submitted

---

[4] The government does not explain why it waited until when it filed its brief in opposition to defendant's motion to make this concession. The government could not have failed to notice this problem earlier. In fact, in its December 17, 2008, discovery letter (G. Br., Exh H), the government refers only to child pornography images sent by Perpetrator to "picluverinusa," not the reverse. Clearly, the government understood the problem by the date of that letter.

with the government's brief, the agent states that prior to applying for the search warrant he personally viewed all the images in the Google Hello chats, including the ones sent by "picluverinusa" to Perpetrator. (Bogdanski aff., ¶ 3). Therefore, he knew these images did not contain child pornography. Yet, in his search warrant affidavit, he states that "many" of these images <u>did</u> contain child pornography. If he had not seen the images beforehand, and was perhaps relying on someone else's erroneous report of what the images contained, that would be bad enough. But having actually seen the images, he can hardly claim his "errors" to have been "inadvertent" There are only two possibilities – one, the agent knew the information was false; or two, the agent "would have known [the information] was false except for his reckless disregard of the truth." <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984). At a minimum, the false statements were recklessly made because the agent did know the true facts and signed an affidavit to the contrary.

It is not the defendant's burden to show that the false statements were knowingly or recklessly made; it is the government's burden to show they were not. Thus, the lack of an explanation as to how these errors were made is another example of the government's failure to carry its burden to show good faith reliance. Moreover, the lack of an explanation is completely unacceptable given what is at stake. This was an affidavit sworn to under oath and submitted to a federal judge in an effort to obtain the legal authorization to invade the privacy of someone's home, a matter of huge significance "to a society which chooses to dwell in reasonable security and freedom from surveillance." <u>Johnson v. United States</u>, 333 U.S. 10, 13 (1948). These errors should be a matter of considerable concern, and they demand an explanation.

Likewise, the government struggles, and ultimately fails, to show that the false

statements were "immaterial." The government argues that since both sending and receiving child pornography are crimes, it does not matter that "picluverinusa" did not send child pornography to Perpetrator. In other words, it is asking the Court simply to ignore the false statement as if it were not even there. But it is there. The government included it in the warrant affidavit presumably because it thought it important to do so. After all, the 30-page warrant affidavit contains a total of two short paragraphs linking "picluverinusa" to prohibited images, and the false statement comprises one of those two paragraphs. This fact alone shows that it was material.

Moreover, the context of the false statement is critical. In the immediately preceding paragraph (¶ 10(a)), the affidavit states that "picluverinusa" told Perpetrator that "he/she liked 'anything young and cute no age prefs'" and Perpetrator sent multiple images of child pornography to "picluverinusa." In the very next paragraph (¶ 10(b)), the affidavit states that "picluverinusa" contacted Perpetrator and this time sent child pornography to Perpetrator. In other words, the affidavit states that they were trading child pornography back and forth.

Why is this important? First, because it makes it appear (falsely, as it turns out) that the generic statement "anything young and cute no age prefs" is a reference to child pornography. Had the affidavit said that at <u>no</u> time did "picluverinusa" send child pornography to Perpetrator, but rather sent something other than child pornography, then "anything young and cute no age prefs" would not have appeared so sinister or significant – because there would have been no false implication that "picluverinusa" had a collection of child pornography from which to trade images.

Second, and even more importantly, the magistrate judge had to determine not just

whether someone was committing a crime, but also whether evidence of that crime would probably be found in "picluverinusa's" home or computer eight to nine months after the images were allegedly sent. The false statement could only have been read to mean that "picluverinusa" had child pornography images of his own to send to Perpetrator and thus was a collector of child pornography. This depiction of "picluverinusa" as a collector of child pornography was essential to the warrant affidavit's lengthy description of "child pornography collector characteristics." (¶¶ 19-20). The "collector" section starts off by saying that "persons who buy, produce, trade or sell child pornography" generally share certain characteristics. (¶ 19). One of those alleged characteristics is that they "rarely, if ever, dispose of their sexually explicit materials, which materials are kept in their homes and treated as prize possessions." (¶ 19(c)).

The false statement that "picluverinusa" sent child pornography to Perpetrator placed "picluverinusa" comfortably within the affidavit's definition of a collector as someone who buys, sells or trades child pornography, and thus established the critical fact that such images would probably be found in his/her home or computer eight to nine months later. When the agent's statement is exposed as false, this critical "fact" fails as well.

A truthful affidavit would have said that "picluverinusa" never sent child pornography to Perpetrator, in either chat session, and instead sent images that were not illegal at all – which would have been consistent with him/her not being a collector and thus obviously being less likely to hoard such child pornography in his/her home. Would a warrant have issued under such circumstances? It seems unlikely.

In any event, this Court certainly cannot conclude that had the false statement not been included in the affidavit, the magistrate judge would have issued the warrant anyway. The false

statement was not merely material, it was critical. And it was at least made with reckless disregard for the truth. Since the agent who executed the warrant was the one who misled the issuing judge, the evidence was not seized "in objectively reasonable reliance on" a warrant issued by a detached and neutral magistrate. United States v. Leon, 468 U.S. at 922. The government has failed to meet its burden to show that the good faith exception applies, and the evidence seized must therefore be suppressed.

## POINT THREE

## MR. GROEZINGER'S STATEMENTS SHOULD BE SUPPRESSED

The government has ignored defendant's argument that his statements should be suppressed as the "fruit of the poisonous tree." If the Court agrees that the search was illegal, the Court should also suppress the statements.

As to defendant's claim that his statements should be suppressed because he was subjected to a custodial interrogation without receiving the Miranda warnings, the government's argument seems to be that he was not in custody because the agents did not affirmatively convey the message that Mr. Groezinger was not free to leave. (G. Br. 39). Actually, they did exactly that. Mr. Groezinger has stated in his affidavit that the agents did not tell him he was free to leave, and in fact made it impossible for him to leave – they kept him under guard in the kitchen and blocked his car in the driveway. Moreover, shortly after the agents arrived, Mr. Groezinger told them he had to make a 7:00 a.m. train to Manhattan for a court appearance. They told him he was going to be late. In other words, they affirmatively conveyed the message that he was not free to leave. Obviously, he was not free to leave. Objectively speaking, Mr. Groezinger's interrogation was custodial.

The government's entire response to Mr. Groezinger's affidavit is a statement by Agent Bogdanski that "during the search I heard another law enforcement agent tell [Groezinger] he was not under arrest." (Bogdanski aff., ¶ 6). The other agent is not named, and the time this statement was supposedly made (whether at the beginning of or during or at the end of the search) is not specified. By failing to controvert Mr. Groezinger's sworn statements, the government has effectively admitted them. The Court should either grant defendant's motion without a hearing, or, if it believes a fuller record is necessary, conduct an evidentiary hearing.

### POINT FOUR

### THE EVIDENCE OBTAINED FROM THE FORMER TENANT SHOULD BE SUPPRESSED

The government claims that it knew about the tenants in the basement apartment before executing the search warrant and that the discovery of the hard drive was inevitable. (G. Br. 41). But it was only during the questioning of Mr. Groezinger that the agents learned about the discarded hard drive. This is what gave the agents a reason to inquire about the hard drive. During the search, Mr. Groezinger also provided the names of his tenants, who later became former tenants. Having gotten the name of the former tenant from Mr. Groezinger during the search, the government was later able to interview him, and thereby obtained the discarded hard drive.

Accordingly, the discovery of the hard drive was not inevitable, and came about as a direct result of the interrogation of Mr. Groezinger, which itself occurred as a direct result of the unlawful search. The hard drive must therefore be suppressed. At a minimum, the Court should not simply accept the government's conclusory statement that it would have inevitably obtained the hard drive even if there had been no constitutional violation. Instead, the Court should

conduct an evidentiary hearing to develop a full record as to the circumstances of the government's obtaining the discarded hard drive.

## POINT FIVE

### THE GOVERNMENT SHOULD BE REQUIRED TO MAKE THE PRETRIAL DISCLOSURES REQUESTED BY THE DEFENSE

For the reasons stated in our main brief, the government should be required to make early disclosure of <u>Brady</u> material, a witness list, and exhibit list, witness statements and impeachment material, and Rule 404(b) evidence.

As to the defense's request that the government simply confirm when discovery has been completed, the government claims that the defense has not complied with the local rule requiring counsel to confer in good faith with opposing counsel in an effort to reach agreement without the intervention of the Court. This local rule plainly does not apply because the defense is not claiming there is a discovery "dispute." Rather, the defense is requesting the Court to direct the government to state when it has completed making discovery so that the defense will have an adequate time to prepare for trial. The defense is not contending that the government has not complied with its discovery obligations to date. The problem is, however, that Rule 16 discovery is often provided much later than the rule contemplates, and frequently continues up to and during trial. The defense is not asking the Court to tell the government to stop investigating. But fairness does require that, at some point prior to trial, the government confirms that discovery is complete such that the case is ready for trial.

## CONCLUSION

For all the foregoing reasons, defendant Robert Groezinger's pretrial motions should be granted.

Dated: White Plains, NY
       May 4, 2009

                          BRICCETTI, CALHOUN & LAWRENCE, LLP

                    By:   S/
                          Vincent L. Briccetti (VB 3285)
                          81 Main Street, Suite 450
                          White Plains, NY 10601
                          (914) 946-5900

                          *ATTORNEYS FOR DEFENDANT*
                          *ROBERT GROEZINGER*

To:    Anna M. Skotko, Esq.
        Assistant United States Attorney
        300 Quarropas Street
        White Plains, NY 10601